UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

RCC VENTURES, LLC,                              Civil Action No.: 17-CV-01585 (GHW)

                     Plaintiff,
    -against-                                    **Filed on July 14, 2017**

BRANDTONE HOLDINGS LIMITED,

                     Defendant.
---------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S REQUEST FOR DAMAGES AND ATTORNEYS' FEES IN ITS MOTION FOR DEFAULT JUDGMENT

GARSON, SÉGAL, STEINMETZ, FLADGATE LLP
Chris Han
Michael Smaila
Robert Garson
164 West 25th Street
Suite 11R
New York, NY 10001
(P): (212) 380 – 3623
(F): (347) 537 – 4540
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii
I. INTRODUCTION .......................................................................................................1
II. STATEMENT OF RELEVANT FACTS.....................................................................2
III. RELEVANT PROCEDURAL HISTORY ...................................................................4
IV. LEGAL STANDARD ..................................................................................................4
V. ARGUMENT................................................................................................................5
   A. New York Choice of Law Governs the Contract. ............................................. 5
   B. Defendant is liable for breach of Contract. ....................................................... 5
   C. Plaintiff is Entitled to Compensatory Damages under the Contract as a result of Defendant's Breach. ............................................................................................................... 6
      1. Plaintiff is entitled to a Finder's Fee as compensatory damages. ................... 7
      2. Plaintiff is entitled to Warrant Coverage as Compensatory Damages. ........... 8
      3. Plaintiff is Entitled to Unpaid Acceptance Deposit as Compensatory Damages. ........... 8
   D. Plaintiff is Entitled to Liquidated Damages. ..................................................... 9
   E. Plaintiff is Entitled to Reasonable Attorneys' Fees. ........................................ 10
   F. Plaintiff is Entitled to Costs and Expenses. ..................................................... 13
   G. Inquest into Damages Is Not Necessary. ......................................................... 14
VI. CONCLUSION ..........................................................................................................15

# TABLE OF AUTHORITIES

CASES

*64th Associates, L.L.C. v. Manhattan Eye, Ear & Throat Hosp.*, 2 N.Y.3d 585, 589-90 (N.Y. 2004) ................................................................................................................ 7

*Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ................................. 14

*Blue Moon Media Group, Inc. v. Field*, 2011 U.S. Dist. LEXIS 108066, at *8-*9 (E.D.N.Y. Apr. 11, 2011) ................................................................................................ 7

*Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ........................................................... 11

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20-21 (2d Cir. 1996) - 10

*Carlton Group, Ltd. v. Par-La-Ville Hotel & Residences Ltd.*, 2016 U.S. Dist. LEXIS 86011, at *9 (S.D.N.Y. June 30, 2016) ................................................................................ 13

*Chuchuca v. Creative Customs Cabinets Inc.*, 2014 U.S. Dist. LEXIS 164846, at *14 (E.D.N.Y. Nov. 25, 2014) ................................................................................................ 5

*Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) ..................................................... 11

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) .......... 5, 14

*Fed. Ins. Co. v. CAC of NY, Inc.*, 2015 U.S. Dist. LEXIS 32098, at *15-16 (E.D.N.Y. Feb. 5, 2015) .............................................................................................................. 5

*Ferrara v. All Am. Trucking Servs., Inc.*, 2012 U.S. Dist. LEXIS 43260, at *20 (E.D.N.Y. Feb. 17, 2012) ........................................................................................................ 11

*Finkel v. Romanowicz*, 577 F.3d 79, 82 n.6 (2d Cir. 2009) ............................................. 4

*Fox Indus., Inc. v. Gurovich*, 2005 U.S. Dist. LEXIS 42232, at *5 (E.D.N.Y. Sept. 21, 2005) - 11

*Freedman v. Chem. Const. Corp.*, 43 N.Y.2d 260, 372 (N.Y. 1977) ................................ 5

*Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ........................ 14

*GE Capital Corp., LLC v. G. Howard Ass'n,* 2010 U.S. Dist. LEXIS 63609, at *16 (E.D.N.Y. May 14, 2010) ............................................................................................... 10, 13, 14

*Granite Ridge Energy, LLC v. Allianz Glob. Risk US Ins. Co.*, 979 F. Supp. 2d 385, 391 (S.D.N.Y. 2013) ......................................................................................................... 5

*Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002) ............................. 7

*Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ...... 4

*Harris v. Seward Park Housing Corp.*, 79 A.D.3d 425, 426, 913 N.Y.S.2d 161, 162 (1st Dep't 2010) ............................................................................................................. 6

*In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1160 (E.D.N.Y. 1995) ............................ 5

*Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995)); *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) ............................................................. 7

*Katehis v. Sovereign Assoc., Inc.*, 44 Misc. 3d 1220(A), 999 N.Y.S.2d 797, 2014 NY Slip Op 51215(U) (Sup. Ct. N.Y. Co., Aug. 11, 2014) ............................................................. 6

*Leasing Service Corp. v. Justice*, 673 F.2d 70, 73 (2d Cir. 1982) ........................................ 9

*Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ............................................... 11

*Morris v. 702 E. Fifth St. HDFC*, 46 A.D.3d 478, 479, 850 N.Y.S.2d 6 (1st Dep't 2007) ..... 6

*Mosler Safe Co. v. Maiden Lane Safe Deposit Co.*, 199 N.Y. 479, 485, 93 N.E. 81, 83 (1910) ................................................................................................................................. 9

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983) .. 11

*Pennacchio v. Powers*, 2011 U.S. Dist. LEXIS 79279, at *6 (E.D.N.Y. July 21, 2011) ........ 13

*Polk v. New York State Dep't of Correctional Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) ........ 11

*Rattigan v. Commodore Int'l Ltd.*, 739 F. Supp. 167, 169 (S.D.N.Y. 1990) ......................... 9

*Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) .......................................... 12

*Scott v. City of New York*, 643 F.3d 56, 58-59 (2d. Cir. 2011) ........................................... 12

*Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) ............................ 11, 13

*The Edward Andrews Group, Inc. v. Addressing Services Co. Inc.*, No. 4-CV-6731, 2005 U.S. Dist. LEXIS 30125, 2005 WL 3215190, at *6 (S.D.N.Y. Nov. 30, 2005) .................. 9

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) ........................................................................................................................... 14

*Tri-Star Pictures v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999) ............................... 13

*Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424 (1977) .................. 9

## R<small>ULES</small>

Fed. R. Civ. P. 55(b) ................................................................................................................ 5

## I. INTRODUCTION

Plaintiff, RCC Ventures, LLC ("RCC" or "Plaintiff"), hereby submits its memorandum of law and Declaration of Chris Han submitted herewith ("Han Decl.") in support of motion for default judgment under Rule 55(b) of the Federal Rules of Civil Procedure ("Default Motion"). Fed. R. Civ. P. 55(b).

This action involves a willful breach of an exclusive debt financing agreement (the "Contract") entered between plaintiff, RCC Ventures, LLC ("Plaintiff" or "RCC") and defendant, Brandtone Holdings Limited ("Brandtone" or "Defendant"). Defendant has failed to respond to or participate in this lawsuit, and has refused to engage Plaintiff for any good faith attempts to resolve this dispute. On June 15, 2017, the Court ordered that if Plaintiff wished to pursue default judgment, Plaintiff should request an entry of default by June 25, 2017 and move for default judgment by July 14, 2017.

Plaintiff requested a Certificate of Default on June 27, 2017 and the Clerk of the Court noted Defendant's default on July 6, 2017. On July 14, 2017, Plaintiff moved for default judgment against Defendant. Plaintiff seeks compensatory damages in the amount of $269,688.00 in finder's fee; warrant coverage valued at $404,532.00; acceptance deposit in the amount of $18,032.00; attorneys' fees, costs and expenses incurred by RCC in enforcement its contractual rights. In the alternative, Plaintiff seeks liquidated damages in the amount of $280,000.00.

## II. STATEMENT OF RELEVANT FACTS

A full account of the facts relevant to this action can be found in RCC's Complaint. (Dkt. 1) and Declaration of Chris Han in support of Default Judgment submitted herewith. Accordingly, only a brief recitation of the facts will be provided.

On October 17, 2014, RCC and Defendant entered into an exclusive debt financing agreement ("Contract"). (Han Decl. ¶ 9, Ex. A). The Contract requires Defendant to pay an "Acceptance Deposit" if Defendant elects to accept the Contract. (Han Decl. ¶21). The $54,000.00 Acceptance Deposit ("Acceptance Deposit") must be paid in two installments: $36,000.00 would be due and payable upon acceptance of the Contract and the remaining $18,000 would be due and payable upon issuance of a lenders term sheet. (Id.). On October 27, 2014, Defendant partially honored its obligation to pay the first installment of the Acceptance Deposit, which amounted to $35,968.00. (Han Decl. ¶22). Defendant, however, did not remit payment for the remaining Acceptance Deposit of $18,032.00. (Han Decl. ¶23).

Throughout the fall of 2014, Defendant provided RCC with information about its financial health so that RCC could advise Defendant as to possible financial solutions. In carrying out its duties under the Contract, RCC identified Ares Capital Corporations Venture Debt Group and Ares Capital Management LLC (together "Ares") as a possible debt-financing partner for Defendant. (Dkt. 1, ¶25).

On October 29, 2014, RCC prepared and sent Ares a Financial Memorandum of "pitchbook" officially called a "Term & Revolver Loan Offering Memorandum" as the first step of the RCC introduction process between a prospective lender (Ares) and borrower (Brandtone). (Dkt. 1, ¶26, Ex. B). Once Ares, the lender received the RCC-prepared Memorandum, the Non-Circumvent period started and continued for a 60-month term. (Id.).

2

Despite multiple discussions and emails between RCC and Ares, Ares made an initial decision not to fund Brandtone. (Dkt. 1, ¶29). In a phone conversation with Padraig McBride of Brandtone following Ares' initial decision not to fund Brandtone, RCC informed Brandtone as to the identity of Ares. (Dkt. 1, ¶30). On December 7, 2014, RCC arranged a meeting with Ares' at Ares' New York office. (Dkt. 1, ¶31). On December 16, 2014, RCC and Ares discussed matters, including consideration of providing a loan to Brandtone. (Id.). These efforts and actions evidence that RCC was still actively engaging Ares on behalf of Brandtone at that time. (Id.). Concurrently, at that time, RCC actively sought to introduce other prospective lenders to Brandtone and incurred expenses in the process of doing so. (Dkt. 1, ¶32).

On June 9, 2015, RCC became aware that Ares provided financing to Brandtone in the amount of 12,000,000 (Euro). (Dkt. 1, ¶33). Brandtone did not know about Ares before RCC's introduction. (Dkt. 1, ¶34). The "Non-Circumvention" of the Contract states that RCC is entitled to a finder's fee in the amount of two percent of the Aggregated Loan received "[i]n the event RCC has introduced the [Defendant] to a third party and Borrower then enters into a debt transaction with that third party, or any affiliate of that third party, within 60 months following this [Contract][.]" (Han Decl. ¶10). Further, Ares falls within the definition of "third party" contemplated by the Contract. (Han Decl. ¶15). Defendant's circumvention occurred on or prior to June 9, 2015, which was well within the 60 months Non-Circumvention period contemplated by the Contract. (Han Decl. ¶16). As a result of Defendant's breach of the Non-Circumvention clause, Plaintiff is entitled to a finder's fee in the amount of 269,688.00 and a warrant coverage valued at $404,532.00 under the terms of the Contract. (Han Decl. ¶¶10-20).

Furthermore, the Contract also provides additional protection if Defendant "does not complete this proposed transaction" or "decides not to proceed for any reason." (Han Decl. ¶32).

3

Brandtone obtained financing in the amount of 12,000,000 (euro) from Ares by circumventing RCC's efforts and resources expended for sourcing and introducing prospective lenders, like Ares, to Brandtone. (Dkt. 1, ¶¶33-34). As a result, Brandtone decided not to proceed with any prospective lenders that RCC had spent time sourcing for and planning to introduce to Brandtone. (Han Decl. ¶33). Brandtone's decision not to proceed constituted a default under the Exclusivity and Breakup Fee clause of the Contract. As a result of Brandton's breach, Plaintiff is entitled to liquidated damages in the amount of $280,000.00, as well as attorneys' fee and costs and expenses incurred in enforcing its contractual rights. (Han Decl. ¶32).

### III. RELEVANT PROCEDURAL HISTORY

On March 23, 2017, Plaintiff served the Summons and Complaint personally on Nancy Dougherty, the authorized agent in the Office of the Secretary of State of the State of New York. (Dkt. 10). Accordingly, Defendant was required to answer or otherwise move by April 13, 2017. (Id.). To date, Defendant has failed to answer, appear or otherwise move. (Han Decl. ¶ 6). Plaintiff requested a Certificate of Default on June 27, 2017, (Dkt. 16) and the Clerk of the Court noted Defendant's default on July 6, 2017 and issued a Certificate of Default against Defendant. (Dkt. 17).

### IV. LEGAL STANDARD

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Finkel v. Romanowicz*, 577 F.3d 79, 82 n.6 (2d Cir. 2009)(For purposes of determining liability, "[a] court accepts as true all well-pleaded allegations against a defaulting defendant."). When a default judgment is entered, a plaintiff must produce sufficient evidence of the damages it seeks with a "reasonable certainty."

4

*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). A court may, at its discretion, conduct a hearing to ascertain the level of damages to be awarded against a defaulting party. *Chuchuca v. Creative Customs Cabinets Inc.*, 2014 U.S. Dist. LEXIS 164846, at *14 (E.D.N.Y. Nov. 25, 2014). To ascertain the damages Plaintiff seeks, the Court may "evaluat[e] and analyz[e] affidavits and other documentary evidence submitted by the plaintiff in regards to the level of damages sought." *Id.* "As long as there is a 'sufficient basis from which to evaluate the fairness' of the sum awarded, a court may rely upon detailed affidavits and documentary evidence to determine damages." *Fed. Ins. Co. v. CAC of NY, Inc.*, 2015 U.S. Dist. LEXIS 32098, at *15-16 (E.D.N.Y. Feb. 5, 2015)(quoting *In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1160 (E.D.N.Y. 1995)).

V. **ARGUMENT**

A. **New York Choice of Law Governs the Contract.**

Under New York law, "'the parties' manifested intentions to have an agreement governed by the law of a particular jurisdiction are honored. It is as though the law of the selected jurisdiction were incorporated into the agreement by reference.'" *Granite Ridge Energy, LLC v. Allianz Glob. Risk US Ins. Co.*, 979 F. Supp. 2d 385, 391 (S.D.N.Y. 2013)(quoting *Freedman v. Chem. Const. Corp.*, 43 N.Y.2d 260, 372 (N.Y. 1977)). Here, New York law applies to the Contract. The Contract contains a Choice of Law Clause, where it states that the Contract "shall be governed by and construed in accordance with the laws of the state of New York[.]" (Han Decl. ¶35).

B. **Defendant is liable for breach of Contract.**

Under New York law, "[t]he elements of a breach of contract claim include the existence of a contract, the plaintiff's performance thereunder, the defendant's breach

5

thereof, and resulting damages." *Katehis v. Sovereign Assoc., Inc.*, 44 Misc. 3d 1220(A), 999 N.Y.S.2d 797, 2014 NY Slip Op 51215(U) (Sup. Ct. N.Y. Co., Aug. 11, 2014)(citing *Harris v. Seward Park Housing Corp.*, 79 A.D.3d 425, 426, 913 N.Y.S.2d 161, 162 (1st Dep't 2010); *Morris v. 702 E. Fifth St. HDFC*, 46 A.D.3d 478, 479, 850 N.Y.S.2d 6 (1st Dep't 2007)).

Here, there is no doubt that RCC and Brandtone entered into an exclusive debt financing agreement on October 17, 2014. (Dkt. 1, ¶16, Ex. A). Moreover, in carrying out its duties, RCC performed under the Contract by creating a customized financing solution for Brandtone and introduced Ares as a prospective lender to Brandtone. (Dkt. 1, ¶25). Moreover, RCC also used the financial information provided by Brandtone and prepared a Financial Memorandum to engage Ares to present Brandtone as a prospective borrower. (Dkt. 1, ¶26, Ex. B). Moreover, throughout the fall of 2014, RCC actively sought to introduce other prospective lenders to Brandtone. (Dkt. 1, ¶32). Brandtone, however, breached the non-circumvention clause of the Contract by obtaining a 12,000,000 (euro) loan from Ares, cutting off months of the efforts and resources RCC deployed in building that relationship between Brandtone and Ares. (Dkt. 1, ¶33). If not for RCC's introduction and its disclosure of the identity of Ares and Ares interest in making a loan to Brandtone, Brandtone would not be able to establish a favorable relationship with such prospective lender. (Dkt 1., ¶¶33-34). Thus, Brandtone's breach caused damages to RCC.

### C. Plaintiff is Entitled to Compensatory Damages under the Contract as a result of Defendant's Breach.

"The general rule for measuring damages for breach of contract has long been settled. It is the amount necessary to put the plaintiff in the same economic position he would have been in had the Defendant fulfilled his contract." *Blue Moon Media Group, Inc. v. Field*, 2011 U.S. Dist.

6

LEXIS 108066, at *8-*9 (E.D.N.Y. Apr. 11, 2011)(quoting *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995)); *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002)(explaining that it is a "fundamental principle" that an award of damages for breach of contract "should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract").

### 1. Plaintiff is entitled to a Finder's Fee as compensatory damages.

The Non-Circumvention Clause of the Contract entitles RCC to recoup damages if Defendant entered into a debt transaction with a third party to whom RCC introduced within 60 months following the execution of the Contract. (Han Decl. ¶10). According to New York law, courts must enforce contract provisions clearly expressing the intent of the parties. *See Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002)("A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."). Courts will not enforce contracts with an illegal purpose or contracts that are contrary to public policy. *See 64th Associates, L.L.C. v. Manhattan Eye, Ear & Throat Hosp.*, 2 N.Y.3d 585, 589-90 (N.Y. 2004).

Here, the Court need not fashion a different remedy. The non-circumvention clause is enforceable, expresses the intent of the parties unambiguously, and does not violate law or public policy. Based on the calculation of the Non-Circumvention Clause, RCC is entitled to $269,688 in finder's fee. (Han Decl. ¶14). This amount is equal to the "Success Fee", which RCC would be entitled to receive from Brandtone upon funding of 12,000,000 (Euro) had Brandtone not breached the Non-Circumvention Clause.[1] (Dkt. 1 ¶22, Ex. A, p.3). Accordingly, awarding

---

[1] Under the "Success Fee" provision of the Contract, RCC is entitled to receive "[t]wo (2.00%) percent of the gross Term Loan approved" and such Success Fee will "be earned and payable to RCC at the first scheduled funding or partial funding of the approved Term Loan." (Dkt. 1, ¶20). In this case, the Success Fee that RCC would have earned is equal to the Cash Finder's Fee.

Plaintiff the finder's fee here is proper and fair because it would put Plaintiff back in the same economic position it would have been in had Brandtone not breached the non-circumvention clause.

### 2. Plaintiff is entitled to Warrant Coverage as Compensatory Damages.

For the same reason as awarding the Finder's Fee, had Brandtone not breached the Non-Circumvention Clause, Brandtone "shall issue to RCC, Warrants to acquire [Brandtone's] Preferred Stock . . . equal to three (3.00%) percent of the gross Term Loan Approved at the first scheduled funding or any partial funding of the financing set forth herein." (Dkt. 1, ¶21, Ex. A, p.3). Similar to awarding the finder's fee, the Non-Circumvention Clause also allows RCC to recover "a warrant coverage to three (3.00%) percent of the aggregated loan made by such third party or affiliate thereof as part of such debt transaction." (Han Decl. ¶18). Based on the calculation set forth clearly in the Contract, the value of the warrant coverage is equal to $404,532.00. (Han Decl. ¶18-20).

### 3. Plaintiff is Entitled to Unpaid Acceptance Deposit as Compensatory Damages.

The Contract included a provision stating that Brandtone would pay $54,000.00 to RCC if it elects to accept the Contract. (Dkt. 1, ¶17). As stated above, RCC and Brandtone executed the Contract. (Dkt. 1, ¶16). On October 27, 2017, as promised, Brandtone pay the first installment of the Acceptance Deposit in the amount of $35,968.00. (Dkt. 1, ¶18). The second installment of the Acceptance Deposit was due and payable upon the signing of the term sheet with Ares. (Dkt. 1, ¶ 28). The term sheet with Ares was signed prior to the loan funding. (Id.). Brandtone, however, did not remit the second installment payment for Acceptance Deposit. (Id.).

### D. Plaintiff is Entitled to Liquidated Damages.

In the alternative, Plaintiff seeks liquidated damages under the Contract. (Han Decl. ¶¶ 31-34). It is well-settled that New York courts uphold liquidated damage provisions so long as "the amount liquidated bears a reasonable proportion to the probable loss and the amount of the actual loss is incapable or difficult of precise estimation." *Leasing Service Corp. v. Justice*, 673 F.2d 70, 73 (2d Cir. 1982); *see also Rattigan v. Commodore Int'l Ltd.*, 739 F. Supp. 167, 169 (S.D.N.Y. 1990).

"In effect, a liquidated damage provision is an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement." *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424 (1977). Generally, as long as the provision reasonably estimates actual damages, courts will enforce the contract so not to interfere with the agreement of the parties. *See The Edward Andrews Group, Inc. v. Addressing Services Co. Inc.*, No. 4-CV-6731, 2005 U.S. Dist. LEXIS 30125, 2005 WL 3215190, at *6 (S.D.N.Y. Nov. 30, 2005) ("New York courts will generally sustain a liquidated damages clause so long as the provision is neither a penalty nor a forfeiture, and equity should intervene to invalidate a liquidated damages clause only in 'rare cases.'") (citations omitted). "Parties to contracts have the right to insert any stipulations that may be agreed to; provided that they be neither unconscionable, nor contrary to public policy." *Truck Rent-A-Ctr., Inc.*, 41 N.Y.2d at 424(citing *Mosler Safe Co. v. Maiden Lane Safe Deposit Co.*, 199 N.Y. 479, 485, 93 N.E. 81, 83 (1910)).

Here, RCC is entitled to a liquidated damage of $280,000.00. At the time of contracting, this amount was a reasonable estimate of the actual damages that RCC may

suffer if Brandtone decided not to proceed with the Contract or, as it occurred here, circumvented RCC's role, exploited RCC's time, efforts and resources expended on behalf of Brandtone in months of working to source and introduce prospective lenders to Brandtone. (Dkt. 1, ¶¶49-50). Moreover, the $280,000.00 liquidated damages requested here "bears a reasonable proportion to the probable loss" to the actual damages, $269,688.00, in Finder's Fee and the Success Fee that RCC would have been paid had Brandtone not breached the Contract. Further, the actual damage is difficult to calculate at the time of contracting, because either the Breakup Fee or Success Fee is based on a percentage of the aggregated loan approved by the prospective lenders. This amount can fluctuate greatly and it depends on the amount of loan RCC would be able to obtain for Brandtone and prospective lenders would be willing to fund Brandtone in light of Brandtone's financial circumstances and the general financial market factors beyond RCC's control.

### E. Plaintiff is Entitled to Reasonable Attorneys' Fees.

As detailed in its filings, Plaintiff seeks attorneys' fees in the amount of $6,325.00 on its breach of contract claim. (Han Decl. ¶¶24-29). The Contract explicitly provides for an award of counsel's fees in connection with enforcing RCC's rights under the Contract. (Dkt. 1, ¶52, Ex. A, p.5).

Under New York law, a provision in a contract for the reimbursement of attorneys' fees is enforceable. *GE Capital Corp., LLC v. G. Howard Ass'n,* 2010 U.S. Dist. LEXIS 63609, at *16 (E.D.N.Y. May 14, 2010)*; Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20-21 (2d Cir. 1996)("the intent to provide for counsel fees as damages for breach of contract must be unmistakably clear in the language of the contract)(internal quotation omitted).

District courts are given broad discretion in granting fee awards and assessing the reasonableness of said fee awards. *Fox Indus., Inc. v. Gurovich*, 2005 U.S. Dist. LEXIS 42232, at *5 (E.D.N.Y. Sept. 21, 2005); *see also Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)(Judges should "use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent and rates charged in a given case."). Plaintiff bears the burden of demonstrating the hours expended and the nature of the work performed. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

The Court of Appeals for the Second Circuit uses the "lodestar method" to assess fee applications. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). The figure that the lodestar method produces is a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2007).

Under the lodestar method, a reasonable hourly rate is multiplied by a reasonable number of hours expended to produce a presumptively reasonable fee award. *Luciano,* 109 F.3d at 115. A reasonable hourly rate is further defined as the rate a "reasonable, paying client would be willing to pay." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).

Courts determine the reasonableness of an attorney's hourly rate as rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Ferrara v. All Am. Trucking Servs., Inc.*, 2012 U.S. Dist. LEXIS 43260, at *20 (E.D.N.Y. Feb. 17, 2012)(quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)), *adopted*, 2012 U.S. Dist. LEXIS 43277, 2012 (E.D.N.Y. Mar. 28, 2012). The "prevailing community" the district court should consider to determine the "lodestar" figure is "the district in which the court sits." *Polk v. New York State Dep't of Correctional Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

Moreover, the party seeking attorneys' fees "must provide contemporaneous time records." *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014)(citing *Scott v. City of New York*, 643 F.3d 56, 58-59 (2d. Cir. 2011)). In the Eastern District of New York, recent cases illustrate that courts have approved hourly rates from $300 to $450 for partners in law firms, and $100 to $325 for associates. *Sass*, 6 F. Supp. 3d at 261 (collecting cases).

In its Motion for Default Judgment, counsel for Plaintiff supplied contemporaneous time records that describe with specificity the nature of the work completed, the hours, and the date. (Han Decl. ¶27, Ex. B). Unlike *Scott v. City of N.Y*, where the court precluded an award of attorneys' fees because of an absence of records, Plaintiff has met its burden of demonstrating the hours expended and the nature of the work performed with contemporaneous and detail records. 626 F.3d at 133-34 (holding that absent extraordinary circumstances, absence of records precludes fee award).

Further, the calculation of attorneys' fees here is reasonable. Plaintiff's calculation of attorneys' fees is acceptable under the lodestar calculation. Plaintiff seeks attorneys' fees for the work of three associates at an hourly rate of $250 for 25.3 hours of work done from January 30, 2017 to July 14, 2017. (Han Decl. ¶27, Ex. B). As stated above, the acceptable hourly rates in the Eastern District of New York for associates in a law firm has ranged from $100 to $325. *Sass* 6 F. Supp. 3d at 261. Thus, the hourly rate of LG's counsel here is comparable to hourly rates of other attorneys in the Eastern District, and the time expended does not include excessive, redundant, or unnecessary hours. Based on the foregoing reason, Plaintiff respectfully requested that the Court recommend the above reasonable attorneys' fees be awarded to RCC's counsel.

### F. Plaintiff is Entitled to Costs and Expenses.

Courts have held that plaintiff is entitled to recover reasonable costs as a result of defendants' default. *GE Capital Corp., LLC v. G. Howard Ass'n,* 2010 U.S. Dist. LEXIS 63609, at *25 (E.D.N.Y. May 14, 2010), *adopted*, 2010 U.S. Dist. LEXIS 57184 (E.D.N.Y., June 8, 2010); *Tri-Star Pictures v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999)("Out of pocket litigation costs are generally recoverable if they are necessary for the representation of the client."). Costs and expenses commonly incurred such as "photocopies, court-imposed filing fees, process servers, and transcripts are routinely recoverable." *GE Capital Corp., LLC v. G. Howard Ass'n,* 2010 U.S. Dist. LEXIS 63609, at *25 (E.D.N.Y. May 14, 2010)(citing *Simmons v. N.Y. City Transit Auth.*, 2008 U.S. Dist. LEXIS 16949, at *7 (E.D.N.Y. Mar. 5, 2008).

Further, Plaintiff "bears the burden of adequately documenting and itemizing the costs requested." *Pennacchio v. Powers*, 2011 U.S. Dist. LEXIS 79279, at *6 (E.D.N.Y. July 21, 2011).

Plaintiff has met its burden of establishing it is entitled to recover costs and expenses incurred in this action. The Contract unequivocally states Defendant shall be responsible for administrative expenses as well as all costs and expenses incurred by RCC. (Dkt. 1, ¶52, Ex. 4). Plaintiff seeks reimbursement of $488.00 for costs and expenses incurred in this action. (Han Decl. ¶30, Ex. C). This amount consists of the service of process fee of $88.00 and a court filing fee of $400.00. *Id.* In further support of its Motion for Default Judgment, Plaintiff has submitted invoices evidencing its payment of costs and expenses in this matter. *Id.*, Ex. C. These fees are reasonable, justified, and commonly recoverable expenditures. *GE Capital Corp., LLC v. G. Howard Ass'n,* 2010 U.S. Dist. LEXIS 63609, at *25 (E.D.N.Y. May 14, 2010); *Carlton Group, Ltd. v. Par-La-Ville Hotel & Residences Ltd.*, 2016 U.S. Dist. LEXIS 86011, at

*9 (S.D.N.Y. June 30, 2016)(awarding the plaintiff $400 in court filing fees and service of process in breach of contract default judgment proceeding based on provisions of the parties' contract).

Based on the foregoing reasons, Plaintiff respectfully requests this Court recommend the amount of costs and expenses above to be awarded to Plaintiff.

### G. Inquest into Damages Is Not Necessary.

A defendant's default amounts to an admission of liability and deems true all of the well-pleaded allegations in plaintiff's complaint pertaining to liability. *See Alcantara*, 183 F.3d at 155; *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Under Rule 55(b)(2), "it is not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)(quoting *Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *GE Capital Corp., LLC v. G. Howard Assocs.*, No. 09-CV-3923 (RRM) (JMA), 2010 U.S. Dist. LEXIS 63609, at *8 (E.D.N.Y. May 14, 2010)(holding hearing is not necessary because Plaintiff submitted "an Affidavit in Support of Motion for Default Judgment, which includes fully executed copies of the Aircraft Lease Agreement, the Security Deposit Pledge Agreement, the Individual Guaranty, and a letter mailed to defendants notifying defendants of their default and detailing the Stipulated Loss Value of the Aircraft; [] the affidavit of Rizwan A. Qureshi, previous counsel to plaintiff, documenting legal fees and costs; [] the affidavit of Frank Peretore, present counsel to plaintiff, documenting legal fees and costs; [] and an Affidavit in Further Support of Motion for Default Judgment itemizing late charges and incurred expenditures from the default and providing the stipulated loss value formula.").

Here, an inquest into damages is not necessary because the basis for the Finder's Fee, warrant coverage, and the unpaid Acceptance Deposit sought in the default judgment was specified in counsel's declaration in support of the motion for default judgment. (Han Decl. ¶¶8-23). Further, RCC submits documents itemizing the legal fees and costs incurred. (Han Decl. ¶¶24-30, Exs. B-C). Accordingly, the calculation of the damages requested here is clear and an inquest into damages is not necessary.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff, RCC Ventures, LLC, respectfully requests that the Court:

i. Enter default judgment against Defendant, Brandtone Holdings Limited, for damages requested in Plaintiff's Motion for Default Judgment;

ii. Award of Finder's Fee of $269,688.00;

iii. Award of warrant coverage valued at $404,532.00;

iv. Award of unpaid Acceptance Deposit of $18,032.00;

v. Award attorneys' fees in the amount of $6,325.00;

vi. Award administrative fees and costs and expenses in the amount of $488.00;

vii. In the alternative, award liquidated damages in the amount of $280,000.00; and

viii. Award any other reliefs that the Court deem just and proper.

Dated: July 14, 2017
New York, New York

                                      Respectfully Submitted,
                                      **Garson, Segal, Steinmetz, Fladgate LLP**
                                      *Attorneys For Plaintiff*

                                      By:   /s/
                                      Chris Han (CH7835)
                                      164 West 25th Street, Suite 11R
                                      New York, NY 10001
                                      Telephone: (212) 380-3623
                                      Facsimile: (347) 537-4540
                                      Email: ch@GS2Law.com