USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/23/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
RCC VENTURES, LLC :
                           Plaintiff, :
: 1:17-cv-1585-GHW
       -against- :
: OPINION AND ORDER
BRANDTONE HOLDINGS LIMITED, :
:
                           Defendant. :
:
----------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

    In this lawsuit, Plaintiff RCC Ventures, LLC ("RCC") seeks to recover amounts allegedly owed it by Defendant Brandtone Holdings Limited ("Brandtone") under an exclusive debt financing agreement. Although Brandtone is an Irish business corporation with its principal place of business in Dublin, RCC has served process in this action only on Brandtone's wholly owned U.S. subsidiary. Brandtone has not appeared. On July 28, 2017, the Court issued an opinion and order denying RCC's motion for default judgment on the ground that RCC had failed to make a *prima facie* showing of proper service of process on Brandtone (the "July 28 Order"). ECF No. 24. In the July 28 Order, the Court also ordered RCC to show cause why this action should not be dismissed for failure to effectively serve Brandtone with process in accordance with Federal Rule of Civil Procedure 4(h)(2). *Id.*

    RCC responded to the order to show cause on August 4, 2017. ECF No. 25. Although certain aspects of RCC's submission suggest that RCC may have misconstrued the July 28 Order as itself dismissing this case (it did not), the Court construes RCC to request that the Court (1) reconsider its denial of default judgment and (2) refrain from dismissing the case for failure to serve. For the reasons that follow, Plaintiff's motion for reconsideration is DENIED, and this action is DISMISSED WITHOUT PREJUDICE.

I.  **BACKGROUND**

RCC initiated this action on March 2, 2017 against Brandtone Holdings Limited, an Irish business corporation with a principal place of business in Dublin. Am. Compl. (ECF No. 7) ("AC") ¶ 3. RCC is a debt advisory company that, among other things, introduces businesses to institutional lenders and arranges for institutional lenders to provide funding to businesses. AC ¶ 5. Brandtone is a mobile marketing firm. AC ¶ 6. RCC seeks damages for amounts allegedly owed it by Brandtone under an exclusive debt financing agreement.

On March 6, 2017, RCC filed with the Court an affidavit of service of a summons and the amended complaint. ECF No. 10. The affidavit indicates that service of process was made on "Brandtone, Inc. s/h/a Brandtone Holdings Limited" through the New York Secretary of State. *Id.* In a May 1, 2017 letter to the Court requesting an adjournment of the initial pretrial conference in this matter, RCC described "Brandtone, Inc." as Brandtone's "wholly owned subsidiary." ECF No. 12. The Court granted that adjournment request the same day, noting that "the Court takes no position regarding whether service has been properly effectuated in this matter." ECF No. 13.

On June 14, 2017, RCC informed the Court of its intention to request a certificate of default and to move for default judgment. ECF No. 14. The Court issued an order the next day, advising RCC that the Court "will carefully scrutinize the issue of service of process prior to granting any default judgment," and directing RCC to "the ample case law holding that service of process on a subsidiary does not constitute valid service on the parent merely by virtue of the parent-subsidiary relationship." ECF No. 15. In addition to that hortatory language, the Court provided several citations to relevant court decisions on the topic.

Shortly after entry of the Court's June 15, 2017 order, RCC began the process of pursuing a default judgment against Brandtone. Upon RCC's request, the Clerk of Court issued a certificate of default on July 6, 2017. ECF No. 17. The Court then issued an order to show cause why default

2

judgment should not be entered against Brandtone on July 14, 2017. ECF No. 19. In accordance with the Court's Individual Rules of Practice in Civil Cases, RCC supported its motion for default judgment with an attorney's affidavit, a memorandum of law, and other required materials. ECF Nos. 21-22.

Despite the Court's order explaining that it would carefully scrutinize whether service on Brandtone's wholly owned subsidiary amounted to proper service on Brandtone before granting default judgment, RCC's discussion of service on Brandtone was limited to the following: "On March 23, 2017, Plaintiff served the Summons and Complaint personally on Nancy Dougherty, the authorized agent in the Office of the Secretary of State of the State of New York." Mem. of Law (ECF No. 21) at 4; *see also* Decl. of Chris Han (ECF No. 22) ¶ 3 ("A copy of the Summons and Amended Complaint was served on Defendant on March 23, 2017 by personal service made on Nancy Dougherty, the authorized agent in the Office of the Secretary of State of the State of New York."). RCC presented no argument as to why its method of service was effective as to Brandtone, nor did RCC address the case law specifically cited by the Court in its June 15, 2017 order, or any other law.

In its July 28 Order, the Court denied RCC's motion for default judgment, concluding that RCC had failed to meet its burden of demonstrating that service was proper. ECF No. 24. The Court also ordered RCC to show cause no later than August 4, 2017 "why this action should not be dismissed for failure to effectuate service in accordance with Federal Rule of Civil Procedure 4(h)(2). *Id.*

RCC responded to the Court's July 28 Order on August 4, 2017 (the "August 4 Submission"). ECF No. 25. In that submission, RCC refers to the July 28 Order as the "Dismissal Order" and asks the Court to "reconsider its decision in the Dismissal Order" pursuant to Federal Rule of Civil Procedure 59(e). Mem. of Law in Resp. to Order to Show Cause for Effective Service

and in Supp. of Mot. to Reconsider (ECF No. 25-3) ("Pl.'s Mem.") at 1. Because RCC invokes Rule 59(e), which covers motions to "alter or amend a judgment," and refers to the July 28 Order as the "Dismissal Order," it appears that RCC may have misconstrued the July 28 Order. In that order, the Court did not dismiss this action, nor has judgment been entered in this case. Indeed, the central point of the July 28 Order was the Court's *refusal* to enter judgment as requested by RCC. Accordingly, Rule 59(e) is not the appropriate vehicle for the relief that RCC seeks at this time. The Court therefore construes RCC to be requesting that the Court (1) reconsider, pursuant to Rule 60(b) and Local Civil Rule 6.3, that portion of the July 28 Order that denied RCC's motion for default judgment and (2) decline to dismiss the case for failure to effectuate service in the manner required by Rule 4(h)(2).

## II. DISCUSSION

### A. The Motion to Reconsider Is Denied

Motions for reconsideration are governed by Local Civil Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which counsel believes the Court has overlooked." "Motions for reconsideration are . . . committed to the sound discretion of the district court." *Immigrant Def. Project v. U.S. Immigration and Customs Enf't*, No. 14-cv-6117 (JPO), 2017 WL 2126839, at *1 (S.D.N.Y. May 16, 2017) (citing cases). The standard for granting a motion for reconsideration is strict, however, and such a motion "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (internal quotation marks and citation omitted); *see Ortega v. Mutt*, No. 14-cv-9703 (JGK), 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) ("Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly." (quoting *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011))). As such, reconsideration should be

4

granted only when the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2016) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)) (internal quotation marks omitted). RCC has not satisfied that standard.

"[A] party is barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so." *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 315 (S.D.N.Y. 2013) (citation omitted). RCC could have made all of the arguments contained in its August 4 Submission when it moved for default judgment. Apparently recognizing this, RCC now argues that "at no point did the Court request argument on" the issue of service. Pl.'s Mem. at 3. RCC similarly asserts that, "[w]hile the Court previously gave its recitation of the law of parent subsidiary liability, the context and phrasing of the Court's June 15, 2017 Order neither directed nor invited comment, argument or challenge." *Id.* at 5. In pressing that argument, RCC quotes some, but not all of, the relevant portion of the June 15, 2017 order. What follows is the portion quoted by RCC in its August 4 Submission:

> The Court directs Plaintiff to the ample case law holding that service of process on a subsidiary does not constitute valid service on the parent merely by virtue of the parent-subsidiary relationship. *See, e.g.*, *Ehrenzeller v. McLane Foodservice, Inc.*, Civil Action No. 13-6872, 2014 WL 325640, at *2 (E.D. Pa. Jan. 29, 2014); *Gilderhus v. Concentrix Corp.*, 825 F. Supp. 2d 414, 432 n.23 (W.D.N.Y. 2011) ("It is hornbook law that service of process on a subsidiary does not constitute service on a parent corporation, nor does service on a parent constitute service on the subsidiary. Except in exceptional circumstances not present here, the law respects separate corporate identities even where one corporation may wholly own another . . . ." (quoting *Sansui Elecs. Corp. v. Am. Southern Ins. Co.*, No. 88-cv-6184, 1992 WL 77591, at *4 (S.D.N.Y. Mar. 26, 1992))).

Pl.'s Mem. at 5. What follows is the complete paragraph from the Court's June 15, 2017 order:

> *Plaintiff is advised that the Court will carefully scrutinize the issue of service of process prior to granting any default judgment. The Court observes that Plaintiff's affidavit of service states that*

5

> *service of process was made on Brandtone, Inc (Dkt. No. 10). In a letter to the Court dated May 1, 2017, Plaintiff described Brandtone, Inc. as Defendant's wholly owned subsidiary (Dkt. No. 12).* The Court directs Plaintiff to the ample case law holding that service of process on a subsidiary does not constitute valid service on the parent merely by virtue of the parent-subsidiary relationship. *See, e.g., Ehrenzeller v. McLane Foodservice, Inc.*, Civil Action No. 13-6872, 2014 WL 325640, at *2 (E.D. Pa. Jan. 29, 2014); *Gilderhus v. Concentrix Corp.*, 825 F. Supp. 2d 414, 432 n.23 (W.D.N.Y. 2011) ("It is hornbook law that service of process on a subsidiary does not constitute service on a parent corporation, nor does service on a parent constitute service on the subsidiary. Except in exceptional circumstances not present here, the law respects separate corporate identities even where one corporation may wholly own another . . . ." (quoting *Sansui Elecs. Corp. v. Am. Southern Ins. Co.*, No. 88-cv-6184, 1992 WL 77591, at *4 (S.D.N.Y. Mar. 26, 1992))).

ECF No. 15 (emphasis added). RCC's omission of the first three sentences from that paragraph does not reflect highly on the candor of its counsel's representations to the Court. The Court is troubled by this selective quotation of its own order. To the extent that the portion quoted by RCC would not, on its own, clue RCC in to the need to brief the issue of service on Brandtone's subsidiary—a conclusion the Court does not accept—the first sentence surely does. The Court is pained to conceive of any other reasonable interpretation of that sentence. RCC's argument that it did not know it should brief the issue of service of process in moving for default judgment, even after the issuance of the June 15, 2017 order, is simply untenable. And, regardless, it was RCC's burden to establish its entitlement to default judgment (including effective service of process) even without any prompting by the Court. The Court also rejects RCC's argument that the propriety of process on Brandtone's subsidiary was so "obvious" that it "required neither rehearsal nor repetition." Pl.'s Mem. at 5.

Because RCC's motion for reconsideration points neither to any controlling decision that the Court overlooked nor to any intervening change of law or clear error, but is instead an attempt to relitigate what should have been litigated properly in the first instance, the motion is denied.[1]

---

[1] The Court also finds that denial of RCC's motion to reconsider will not result in manifest injustice. For one thing, the Court's denial of the motion for default judgment was without prejudice. Nothing prevents RCC from trying again in the future.

### B. The Action is Dismissed Without Prejudice

Notwithstanding the above, the Court considers the merits of the arguments in RCC's August 4 Submission in considering whether this action should be dismissed for failure to serve process on Brandtone by any permissible method. As the Court explained in the July 28 Order, "[a] court may not properly enter a default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *Acceptance Ins. Co. v. Home Med. Of Am., Inc.*, No. 04-cv-9338 (WHP), 2005 WL 3471780, at *2 (S.D.N.Y. Dec. 20, 2005) (quoting *Copelco Capital, Inc. v. Gen. Consul of Bolivia*, 940 F. Supp. 93, 94 (S.D.N.Y. 1996)); *see also Licci v. Lebanese Canadian Bank SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (stating that "[t]he lawful exercise of personal jurisdiction by a federal court requires," *inter alia*, "plaintiff's service of process upon the defendant [to] have been procedurally proper"); *Aspex Eyewear, Inc. v. Cheuk Ho Optical Int'l Ltd.*, No. 00-cv-2389 (RMB), 01-cv-1315 (RMB), 2005 WL 3501900, at *1 (S.D.N.Y. Dec. 21, 2005) ("A default judgment 'obtained by way of defective service is void *ab initio* and must be set aside as a matter of law. Plaintiff has the burden of demonstrating that service was proper." (quoting *Howard Johnson Int'l v. Wang*, 7 F. Supp. 2d 336 (S.D.N.Y. 1998), *aff'd*, 181 F.3d 82 (2d Cir. 1999))).

Moreover, service of process on a subsidiary does not automatically constitute valid service on the parent. *See, e.g.*, *Ehrenzeller v. McLane Foodservice, Inc.*, No. 13-6872, 2014 WL 325640, at *2 (E.D. Pa. Jan. 29, 2014) ("It is well-established that service upon the subsidiary does not constitute valid service upon the parent merely because of the relationship between the corporate entities."); *Gilderhus v. Concentrix Corp.*, 825 F. Supp. 2d 414, 432 n.23 (W.D.N.Y. 2011) ("It is hornbook law that service of process on a subsidiary does not constitute service on a parent corporation, nor does service on a parent constitute service on the subsidiary. Except in exceptional circumstances not present here, the law respects separate corporate identities even where one corporation may wholly

own another . . . ." (quoting *Sansui Elecs. Corp. v. Am. Southern Ins. Co.*, No. 88-cv-6184, 1992 WL 77591, at *4 (S.D.N.Y. Mar. 26, 1992))). Instead, service on the agent of a subsidiary, as was the case here, is generally effective as to the parent only if there are grounds to pierce the corporate veil:

> Service of the summons and complaint on a proper agent of a subsidiary corporation may constitute sufficient service on the parent corporation under certain circumstances, but it should be noted that the parent-subsidiary relation alone ordinarily does not establish the necessary agency for making service on one through the other if the two maintain separate identities . . . . The federal courts generally have preserved the corporate fiction and been unwilling to pierce the corporate veil. The cases indicate that to sustain service on the parent through the subsidiary, or vice versa, a showing that the subsidiary corporation is acting as an agent for the parent corporation's separate business within the state or that the two corporations are not really separate entities has been required.

4A Wright & Miller, Federal Practice and Procedure § 1104 (4th ed.) (footnotes omitted).

Federal Rule of Civil Procedure 4(h) provides the means by which a corporation such as Brandtone may be effectively served with process. A corporation may be served in a United States judicial district in the same manner permitted under Rule 4(e)(1) for serving an individual or by

> delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1). A corporation may be served at a place outside of any United States judicial district "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Omitting the expressly excepted personal delivery method, Rule 4(f) provides that service may be made:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

    (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

>   (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
>   (C) unless prohibited by the foreign country's law, by:
>
>   . . .
>
>   (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

RCC's August 4 Submission is not a model of clarity. However, the Court views it as making two arguments: First, RCC argues that it was proper to serve Brandtone's subsidiary, Brandtone, Inc., in a United States judicial district pursuant to Rule 4(h)(1). Second, but not entirely unrelatedly, RCC appears to argue that the circumstances particular to this case excuse it from compliance with the requirements for service outside of a United States judicial district pursuant to Rule 4(h)(2).[2]

RCC's first argument falls flat. RCC purports to "recognize[ ] that in order to allow service on a subsidiary company through a parent, one must establish, sufficient agency relationship or that the two corporations are not really separate entities" and "submit[s]" that "*a fortiori*, the converse is true." Pl.'s Mem. at 6-7. But then RCC merely declares, without any factual or legal support, that Brandtone Inc.'s status as a special purpose vehicle ("SPV") somehow satisfies this test on a *per se* basis. RCC is correct that courts have found service on a subsidiary to be effective as to the parent when the where the two corporations did not truly function as separate entities, but RCC has not shown that to be the case here.

To the extent that RCC asserts that all SPVs satisfy this test, it is wrong. SPVs are frequently

---

[2] In truth, it is not entirely clear whether RCC is making this second argument. On one hand, it contends that "Brandtone's foreign bankruptcy render[s] this case exceptional" and "[p]ermit[s] [t]his Court's [e]xercise of [j]urisdiction [o]ver Brandtone." Pl.'s Mem. at 5. On the other hand, even after making that argument, RCC concedes that service on Brandtone, Inc was only proper if RCC could establish a "sufficient agency relationship or that the two corporations are not really separate entities." *Id*. at 6. But that simply describes the rules without any exceptions. In other words, if Brandtone, Inc. were an "agent" of Brandtone in the relevant sense (or there were grounds to pierce the veil), then service on Brandtone, Inc. would always have been proper, without regard to any purported exceptional circumstances.

9

created with care precisely to avoid the risk that a court would disregard their corporate separateness from their parents. *See, e.g.*, Jason H.P. Kravitt et al., Securitization of Financial Assets Ch. 14 (3d ed. 2016); *cf., e.g., McCall v. Chesapeake Energy Corp.*, 817 F. Supp. 2d 307, 314 n.8 (S.D.N.Y. 2011) (explaining that, in order to pierce the corporate veil of SPVs under Delaware law, the plaintiff "must allege facts that, if taken as true, demonstrate the [parent company's] complete domination and control of the [subsidiary.] The degree of control required to pierce the veil is exclusive domination and control to the point that the [subsidiary] no longer has legal or independent significance of its own. Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice. Effective, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."); *HOB Ent'mt, Inc. v. SilkHOB, LLC*, No. 4:08-cv-2783, 2011 WL 321780, at *8-9 (D.S.C. Jan. 28, 2011) (refusing to pierce veil of SPV based on the particular facts of the case). And RCC fails to provide any specific factual basis for the Court to disregard the legal separateness of Brandtone and Brandtone, Inc. here. There is no factual showing—beyond the mere assertion of SPV status—that Brandtone exercises exclusive dominance and control over Brandtone, Inc., that Brandtone, Inc. exists solely as a vehicle for fraud by Brandtone, or of any other common basis for veil piercing, such as the failure to observe corporate formalities.

Under Rule 4(h)(1), service on Brandtone, Inc. also would have been proper if Brandtone, Inc. was an "agent authorized by appointment or by law to receive service of process" on behalf of Brandtone. Fed. R. Civ. P. 4(h)(1)(B).[3] However, RCC provides no factual basis for the Court to conclude that such an authorization by law or appointment exists here.

Brandtone's argument that the circumstances of this case entitle it to an exception from the requirements of Rule 4(h)(2) similarly misses the mark. Here again, RCC has engaged in, at best, a

---

[3] To the extent that RCC purports to rely on state-law methods of service pursuant to Rule 4(e)(1), as incorporated into Rule 4(h)(1), the standard is essentially the same, as RCC explains in its brief. *See* Pl.'s Mem. at 6.

careless reading and drafting job and, at worst, an attempt to misdirect the Court. First, RCC contends that the Court's July 28 Order "required RCC to show cause that service had been made originally on [Brandtone] in accordance with the Hague Convention." Pl.'s Mem. at 1. That is not correct. The Court's order did not so limit the prescribed showing. Instead, the July 28 Order directed RCC to show cause "why this action should not be dismissed for failure to effectuate service in accordance with Federal Rule of Civil Procedure 4(h)(2)." ECF No. 24.

As noted above, Rule 4(h)(2) incorporates the *three* broad methods (minus one subpart) permitted for non-domestic service on individuals under Rule 4(f). One of those three methods is "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). But there are two more methods. RCC, however, cites only one of them—that is, RCC quotes the first two permitted methods of non-domestic service, but omits the third. *See* Pl.'s Mem. at 3-4. RCC then proceeds to argue that, because it could not have served Brandtone by either of the two cited methods, "the only correct route . . . was to serve the wholly owned subsidiary-SPV." *Id.* at 5.

RCC provides no basis for its apparent argument that service on a domestic subsidiary is an available backup plan whenever service by the methods prescribed in Rule 4(f) is not feasible. Even more significantly, the third method of permissible non-domestic service—the one that RCC happens to have omitted entirely from its brief to the Court—is important here. It permits service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Thus, if RCC believed it could not effectuate service on Brandtone pursuant to either Rule 4(f)(1) or (2), it could have asked the Court to approve any other form of service that is not prohibited by an international agreement. Instead of doing so, RCC took it upon itself to craft its own form of service, which RCC was not entitled to do.

RCC also argues that the fact that Brandtone is currently protected by a stay of all proceedings under the Irish Companies Act in connection with its entry into examinership (a form of insolvency proceeding under Irish law) gives rise to an "[e]xceptional [c]ircumstance" permitting a departure from the rules for service of process. Pl.'s Mem. at 5. Indeed, RCC contends that this conclusion was "obvious" and "required neither rehearsal nor repetition." *Id.* Not surprisingly, RCC provides no legal support for the contention, even after now providing eight pages of briefing. As explained above, if RCC believed that Brandtone's examinership made service under Rule 4(f)(1) or (2) unfeasible, it could have asked the court to order a different form of service. But it did not do so.

In sum, the Court concludes that RCC has not demonstrated that it has effected proper service of process on Brandtone in this action, even after explicit prompting from the Court before RCC's motion for default judgment and the instant order to show cause. Pursuant to Federal Rule of Civil Procedure 4(m),

> [i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Although Rule 4(m) states that it "does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1)," that exception does not apply where, as here, service has not been attempted in a foreign country. *See, e.g.*, *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133-34 (2d Cir. 2005) ("Although Rule 4(m) creates an exception for 'service in a foreign country pursuant to subdivision (f),' which sets forth procedures for such service, this exception does not apply if, as here, the plaintiff did not attempt to serve the defendant in the foreign country." (internal citation omitted)); *see also DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010) ("We have previously held inapplicable the foreign country exception to [Rule] 4(m)'s 120-day time limit for service where a

party did not attempt service within the 120-day limit and 'had not exactly bent over backward to effect service.'" (citation omitted)).

RCC filed its complaint on March 2, 2017, well over 90 days ago. ECF No. 1. And while RCC has served Brandtone's U.S. subsidiary, RCC has provided no basis for the Court to conclude that such service was effective as to Brandtone. In responding to the instant order to show cause, RCC did not request that the Court extend the time for it to effect service on Brandtone, nor, for the reasons described above, did it show good cause for its failure. Instead, RCC simply insists, without adequate support in law or fact, that the method of service it has chosen was proper and effective. Accordingly, the Court dismisses this action without prejudice for failure to serve Defendant Brandtone Holdings Limited.

## III. CONCLUSION

For the reasons described above, Plaintiff RCC Ventures, LLC's motion for reconsideration is DENIED, and this action is DISMISSED WITHOUT PREJUDICE for failure to serve Defendant Brandtone Holdings Limited in a manner permitted under the Federal Rules.

The Clerk of Court is directed to terminate all motions, adjourn all pending dates, and close this case.

SO ORDERED.

Dated: August 22, 2017  
New York, New York

GREGORY H. WOODS  
United States District Judge